KEVIN JOHNSON (24784)
Of Counsel
**CORVUS LAW GROUP, LLC**
1042 Fort Union Blvd, Ste 231
Salt Lake City, Utah 84047
Telephone: (888) 315-4735
Facsimile: (888) 316-0929

Attorney for Plaintiffs

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL BISSON; DOUGLAS AND SUZANNE KNUTSON; ALBERT PEARSON; JOHN PAPENBROCK; CHARLES AND TERI TRAFTON; JOSEPH KOLLMAN; AARON AND TAWNYA CRAIN; FREDERICK KREIDLER; YELENA SHINKAREVICH; IRAN ALEXANDER JR; JOSE AND ALICIA OKADA; SCOTT AND TINA HAY; DANNY LEE OSTMAN AND CATHERINE KELLEIGH; GAVIN AND JILL SWENSON; JAMES AND CYNTHIA HOAGLAND; ROBERT AND PATTY JO FURST; BRETT MERRICK; JERRY AND KERRY LAMB; CORNELIUS DENNIS AND SUSAN BRISLAWN; CHARLES AND LINDA FOSTER; LAWRENCE AND CHERYL REINIG; CRAIG AND LISA BURNS; WILLIAM AMEND; RUSSELL ABRAMS; RICHARD AND DENISE VULLIET; KENNEDY AND DORIS AKINTOSOTU; SAMUEL AND CANDACE BEARDSLEE; RONALD AND JULIE DUNN; MIKE AND DONNA EBERLE; | **COMPLAINT**<br><br>DEMAND FOR JURY TRIAL<br><br><br>Case No.:<br><br>Judge: |

RICHARD GRANT; ERIK AND JODIE
LARSON; JEFF AND MARGO
MITTENBERGER; KENNETH
O'DONNELL; TIM QUENZER; SCOTT
SCRIBNER; ROBIN SHEA; JAYSON AND
TINA STUNS; RONALD AND SUZANNE
SYKURSKI; CALEB WATERS; CARL AND
JOAN YOUNG ,

     *Plaintiffs*,

vs.


BANK OF AMERICA, N.A.;
COUNTRYWIDE BANK, FSB; BAC HOME
LOANS SERVICING; COUNTRYWIDE
HOME LOANS, INC., RECONTRUST
COMPANY, N.A.; MORTGAGE
ELECTRONIC REGISTRATION SYSTEM,
INC., AND JOHN DOES 1-10,

     *Defendants*.

Plaintiffs, DANIEL BISSON; DOUGLAS AND SUZANNE KNUTSON; ALBERT

PEARSON; JOHN PAPENBROCK; CHARLES AND TERI TRAFTON; JOSEPH KOLLMAN;

AARON AND TAWNYA CRAIN; FREDERICK KREIDLER; YELENA SHINKAREVICH;

IRAN ALEXANDER JR; JOSE AND ALICIA OKADA; SCOTT AND TINA HAY; DANNY

LEE OSTMAN AND CATHERINE KELLEIGH; GAVIN AND JILL SWENSON; JAMES

AND CYNTHIA HOAGLAND; ROBERT AND PATTY JO FURST; BRETT MERRICK;

JERRY AND KERRY LAMB; CORNELIUS DENNIS AND SUSAN BRISLAWN; CHARLES

AND LINDA FOSTER; LAWRENCE AND CHERYL REINIG; CRAIG AND LISA BURNS;

WILLIAM AMEND; RUSSELL ABRAMS; RICHARD AND DENISE VULLIET; KENNEDY AND DORIS AKINTOSOTU; SAMUEL AND CANDACE BEARDSLEE; RONALD AND JULIE DUNN; MIKE AND DONNA EBERLE; RICHARD GRANT; ERIK AND JODIE LARSON; JEFF AND MARGO MITTENBERGER; KENNETH O'DONNELL; TIM QUENZER; SCOTT SCRIBNER; ROBIN SHEA; JAYSON AND TINA STUNS; RONALD AND SUZANNE SYKURSKI; CALEB WATERS; CARL AND JOAN YOUNG (hereinafter referred to as "Plaintiffs") by and through their counsel of record, Corvus Law Group, LLC, make and file this Complaint. In support of this Complaint, Plaintiffs allege as follows:

## NATURE OF THE CASE

1.      Plaintiffs bring this declaratory action in order to prevent the improper taking and/or foreclosure of their property by Defendants who either no longer own the debt secured by Plaintiffs' homes or never owned the debt and who lack the right to initiate non-judicial foreclosure proceedings on behalf of the true owners of the debt.

2.      Plaintiffs further bring this action against Defendants for damages and harm resulting from Defendants' negligent, fraudulent, and unlawful conduct concerning a residential mortgage loan and foreclosure proceedings on their property.

3.      Plaintiffs allege that Defendants are third-party strangers to their mortgage loans and have no ownership interest entitling them to collect payment or declare a default. By hiding behind the complexities of the mortgage finance system, Defendants brazenly attempt to dupe Plaintiffs (and millions of other American homeowners) into believing that they have the right to collect on a debt in which they have no ownership interest. In an attempt to further their fraudulent scheme and create the air of propriety surrounding their debt collection efforts,

Defendants failed to execute and record an "Assignment of Deed of Trust" prior to closing. Through this action, Plaintiffs seeks to stop Defendants' fraudulent practices, discover the true holders in due course of their Promissory Notes ("Notes"), and determine the status of Defendants' claims.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332(a).  The Plaintiffs and Defendants are completely diverse and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

5.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. One or more parties to this action are national associations or institutions federally regulated under 12 U.S.C. §§ 2601 et seq. (RESPA) and 15 U.S.C. §§ 1601 et seq. (TILA) and other regulatory statutes.  Pursuant to 28 U.S.C. § 1367, this court also has supplemental jurisdiction over Plaintiffs' state law claims because they are so related to Plaintiffs' claims arising under federal law that they form part of the same case or controversy.

6.     Venue is proper in the United States Court for the District of Idaho pursuant to 28 U.S.C. § 1391(c).

## PARTIES

4.     Plaintiff Daniel Bisson is the owner of the property located at 2052 McHugh Avenue, Enumclaw, Washington 98022.  He originated his loan with Countrywide Bank on or about August 27, 2007.  Bank of America purports to be the current servicer of his loan.

5.     Plaintiffs Douglas and Suzanne Knutson are husband and wife and are the owners of the property located at 4405 Anaco Beach Place, Anacortes, Washington 98221.  They

originated their loan with Countrywide Bank on or about June 22, 2007. Bank of America purports to be the current servicer of their loan.

6.     Plaintiff Albert Pearson is the owner of the property located at 2018 Rucker Avenue, Everett, Washington 98201. He originated his loan with Countrywide Home Loans on or about June 14, 2007. Bank of America purports to be the current servicer of his loan.

7.     Plaintiff John Papenbrock is the owner of the property located at 3012 Edith Avenue, Enumclaw, Washington 98022. He originated his loan with Bank of America on or about May 22, 2007. Bank of America purports to be the current servicer of his loan.

8.     Plaintiffs Charles and Teri Trafton are husband and wife and are the owners of the property located at 1420 Terry Avenue, Seattle, Washington 98101. They originated their loan with Bank of Ameirca on or about February 24, 2006. Bank of America purports to be the current servicer of their loan.

9.     Plaintiff Joseph Kollman is the owner of the property located at 905 Reiten Road, Kent, Washington 98030. He originated his loan with Countrywide Bank on or about July 24, 2008. Bank of America purports to be the current servicer of his loan.

10.     Plaintiffs Aaron and Tawnya Crain are husband and wife and are the owners of the property located at 2160 SE Tiburon Court, Port Orchard, Washington 98366. They originated their loan with Countrywide Home Loans on or about December 27, 2005. Bank of America purports to be the current servicer of their loan.

11.     Plaintiff Frederick Kreidler is the owner of the property located at 610 6th Street, Mukilteo, Washington 98275. He originated his loan with Republic Mortgage Home Loans on or about July 13, 2007. Bank of America purports to be the current servicer of his loan.

12.　Plaintiff Yelena Shinkarevich is the owner of the property located at 4324 S. 299th Street, Auburn, Washington 98001.  She originated her loan with Countrywide Home Loans on or about April 18, 2007.  Bank of America purports to be the current servicer of her loan.

13.　Plaintiff Iran Alexander JR is the owner of the property located at 17312 125th Avenue, Renton, Washington 98058.  He originated his loan with Countrywide Bank on or about December 3, 2007.  Bank of America purports to be the current servicer of his loan.

14.　Plaintiffs Jose and Alicia Okada are husband and wife and are the owners of the property located at 5222 NE 184th Street, Lake Forest Park, Washington 98155.  They originated their loan with Countrywide Home Loans on or about March 2, 2006.  Bank of America purports to be the current servicer of their loan.

15.　Plaintiffs Scott and Tina Hay are husband and wife and are the owners of the property located at 2019 NE 158th Circle, Vancouver, Washington 98686.  They originated their loan with Bank of America on or about February 23, 2007.  Bank of America purports to be the current servicer of their loan.

16.　Plaintiffs Danny Lee Ostman and Catherine Kelleigh are single individuals and are the owners of the property located at 18219 14th Street NE, Snohomish, Washington 98290.  They originated their loan with Countrywide Bank on or about February 27, 2008.  Bank of America purports to be the current servicer of their loan.

17.　Plaintiffs Gavin and Jill Swenson are husband and wife and are the owners of the property located at 799 E Woodview Drive, Spokane, Washington 99212.  They originated their

loan with Countrywide Home Loans on or about August 1, 2007.  Bank of America purports to be the current servicer of their loan.

18.     Plaintiffs James and Cynthia Hoagland are husband and wife and are the owners of the property located at 301 Driftwood Shores Road, Camano Island, Washington 98282.  They originated their loan with Bank of America on or about April 19, 2007.  Bank of America purports to be the current servicer of their loan.

19.     Plaintiffs Robert and Patty Jo Furst are husband and wife and are the owners of the property located at 9428 Kopachuck Drive NW, Gig Harbor, Washington 98335.  They originated their loan with Countrywide Home Loans on or about January 18, 2006.  Bank of America purports to be the current servicer of their loan.

20.     Plaintiff Brett Merrick is the owner of the property located at 10008 91st Avenue NE, Arlington, Washington 98223.  He originated his loan with Countrywide Home Loans on or about July 22, 2005.  Bank of America purports to be the current servicer of his loan.

21.     Plaintiffs Jerry and Kerry Lamb are husband and wife and are the owners of the property located at 11805 SE 321st Place, Auburn, Washington 98092.  They originated two loans with Countrywide Home Loans on or about October 2, 2006 and October 3, 2006.  Bank of America purports to be the current servicer of their loans.

22.     Plaintiffs Cornelius Dennis and Susan Brislawn are husband and wife and are the owners of the property located at 19325 NE 142nd Court, Woodinville, Washington 98077.  They originated their loan with Bank of America on or about June 28, 2007.  Bank of America purports to be the current servicer of their loan.

23.     Plaintiffs Charles and Linda Foster are husband and wife and are the owners of the property located at 5606 High Acres Drive NW, Gig Harbor, Washington 98332.  They originated their loan with Countrywide Bank on or about November 26, 2007.  Bank of America purports to be the current servicer of their loan.

24.     Plaintiffs Lawrence and Cheryl Reinig are husband and wife and are the owners of the property located at 5025 NW Uff Da Lane, Silverdale, Washington 98383.  They originated their loan with Countrywide Bank on or about August 27, 2007.  Bank of America purports to be the current servicer of their loan.

25.     Plaintiffs Craig and Lisa Burns are husband and wife and are the owners of the property located at 18351 NE 159th Street, Woodinville, Washington 98072.  They originated their loan with Countrywide Bank on or about July 9, 2008.  Bank of America purports to be the current servicer of their loan.

26.     Plaintiff William Amend is the owner of the property located at 8625 118th Avenue SE, Newcastle, Washington 98223.  He originated his loan with Countrywide Bank on or about March 6, 2008.  Bank of America purports to be the current servicer of his loan.

27.     Plaintiff Russell Abrams is the owner of the property located at 1610 E 1st Avenue, Spokane, Washington 99202.  He originated his loan with Countrywide Bank on or about February 22, 2008.  Bank of America purports to be the current servicer of his loan.

28.     Plaintiffs Richard and Denise Vulliet are husband and wife and are the owners of the property located at 22313 93rd Place W, Edmonds, Washington 98020.  They originated two loans with Countrywide Home Loans on or about February 21, 2007.  Bank of America purports to be the current servicer of their loans.

29.     Plaintiffs Kenneth and Janet O'Donnell are husband and wife and are the owners of the property located at 20113 53rd Street SE, Snohomish, Washington 98290.  They originated two loans with Bank of America on or about March 7, 2007.  Bank of America purports to be the current servicer of their loans.

30.     Plaintiff Doris Akintosotu is a married woman and is the sole the owner of the property located at 1523 S 94th St, Tacoma, WA 98444.  She originated the loan with Pierce Commercial Bank.  Bank of America purports to be the current servicer of her loan.

31.     Plaintiff Samuel and Candace Beardslee are husband and wife and are the owners of the property located at 409 E. Astor Ave, Colville, Washington 98114.  They originated their loan with Bank of America on or about September 27, 2007.  Bank of America purports to be the current servicer of their loans.

32.     Plaintiff Ronald Dunn and Julie Foort is a single man and a single woman and are the owners of the property located at 11877 Olga Rd, Anacorths, Washington 98221.  They originated their loan with Countrywide on or about July 18, 2005.  Bank of America purports to be the current servicer of their loans.

33.     Plaintiffs Mike and Donna Eberle are husband and wife and are the owners of the property located at 35621 313th Pl, NE., Arlington, WA 98223.  They originated their loan with Countrywide and Bank of America purports to be their servicer.

34.     Plaintiff Richard Grant is a single man and is the owner of the property located at 3803 108th Pl SE, Everett Washington 98208.  He originated his loan with Countrywide on or about July 5, 2007.  Bank of America purports to be the current servicer of his loans.

35.     Plaintiffs Jeff and Margo Mittenberger are husband and wife and are the owner of the property located at 14859 Northeast 195th Street, Woodinville, Washington 98072.  Ther originated their loans with Countrywide on or about September 8, 2004.  Bank of America purports to be the current servicer of their loans.

36.     Plaintiff Tim Quenzer is a married man and the sole owner of the property located at 11820 212th SE, Snohomish, WA 98296.  Bank of America purports to be the current servicer of his loans.

37.     Plaintiff Scott Scribner is a married man and the owner of the property located at 842 84th Ave, NE., Medina Washington 98039.  Bank of America purports to be the current servicer of his loans.

38.     Plaintiff Robin Shea is the owner of the property located at 7321 Village Dr., Sumner, Washington 98390.  Bank of America purports to be the current servicer of her loans.

39.     Plaintiffs Jayson and Tina Stuns are husband and wife and are the owners of the property located at 12416 160th Street E., Puyallup, Washington 98374.  Bank of America purports to be the current servicer of their loans.

40.     Plaintiffs Ronald and Suzanne Sykurski are husband and wife and are the owners of the property located at 7621 Greenridge Ct., SE, Snoqualmie Washington 98065.  Bank of America purports to be the current servicer of their loans.

41.     Plaintiff Caleb Waters is the owner of the property located at 1906 Yew Street Rd., Bellingham, Washington 98229.  Bank of America is the purported servicer of his loans.

42. Plaintiffs Carl and Joan Young are husband and wife and are the current owners of the property located at 6715 Sierra Dr., SE, Lacey Washington 98503. Bank of America purports to be the current servicer of their loans.

43. Defendant, Bank of America and BAC Home Loan Servicing (hereafter "Bank of America") is a California company, with its principal place of business in Simi Valley, California and at all times relevant herein was doing business in the State of Washington.

44. Defendant, Mortgage Electronic Registration Systems ("MERS") is a Delaware Company, with its principal place of business in Reston, Virginia and at all times relevant herein was doing business in the State of Washington.

45. At all times material hereto, Defendant Countrywide Bank, FSB ("Countrywide Bank") was a Delaware corporation, or a division or subsidiary of Bank of America, and at all times relevant herein was doing business in the State of Washington. In 2007, Countrywide Bank was acquired by Bank of America.

46. At all times material hereto, Defendant Countrywide Home Loans, Inc. ("Countrywide Home Loans") was a New York corporation, or a division or subsidiary of Bank of America, and at all times relevant herein was doing business in the State of Washington.

47. At all times material hereto, ReconTrust Company, N.A. ("ReconTrust") was and is a National Banking Association organized under the laws of the State of Texas and at all times relevant herein was doing business in the State of Washington. ReconTrust purportedly acts as a trustee with regard to the deeds of trust of certain Plaintiffs and has attempted or is attempting to conduct non-judicial foreclosure sales of the real property of those Plaintiffs.

48.     ReconTrust is a wholly owned subsidiary of Bank of America that has intentionally and maliciously concealed the true names of entities to which Plaintiffs' home loans were transferred.  ReconTrust is one of Bank of America's agents and acts as trustee under certain of the deeds of trust securing real estate loans so as to foreclose on property securing the real estate loans held or serviced by Bank of America.  The foregoing is part of a scheme by which the Bank of America, Countrywide Financial, and Countrywide Home Loans (collectively, "Countrywide Defendants") concealed the transfers of loans and deeds of trust in violation of Washington Statutes §§ 45-1504 and 45-1505 as more fully described herein.

49.     BAC Home Loans Servicing ("BAC Home Loans") is a Texas corporation and at all times relevant herein was doing business in the State of Washington.  BAC Home Loans purports to be the servicer of certain of Plaintiffs' loans and has attempted or is attempting to conduct non-judicial foreclosure sales of the real property of those Plaintiffs.

50.     Defendant John Does 1-10 are individuals and entities, whose identities have been withheld by the Defendants, or unknown successors in interest, or currently unknown entities who claim interest in the properties.  Plaintiffs are unaware of the true names and capacities of Defendant John Does 1-10 and therefore sue these defendants using fictitious names.  Plaintiffs are informed and believe, and on that basis, allege that these fictitiously named defendants are in some manner responsible for the damage to Plaintiffs as alleged in this Complaint.  Plaintiffs will amend this Complaint to show the true names and capacities of these fictitiously named defendants after their true names and capacities have been ascertained.

51.     The actions and course of conduct of the Defendants were executed, as to all Plaintiffs, in the same manner and means (fraudulent misrepresentations in documents filed in

courts, public records, and through the mails); with the same motive (to institute fraudulent and unauthorized foreclosure proceedings); with the same intended class of victims (owners of real property); and with the same intended consequences (wrongfully foreclosing on real property), pursuant to a well-planned and orchestrated scheme to defraud which was executed on a national scale throughout the United States through the institution of fraudulent foreclosure actions and regular and systematic violations of foreclosure laws in both judicial and non-judicial foreclosure jurisdictions, resulting in a nationalized fraud which has resulted in damages to the Plaintiffs.

## **NATURE OF THE CASE**

52. Plaintiffs bring this declaratory action in order to prevent the improper taking and/or foreclosure of their properties by Defendants who either no longer own the debt secured by their homes or never owned the debt and who lack the right to initiate non-judicial foreclosure proceedings on behalf of the true owners of the debt.

53. Plaintiffs further bring this action against Defendants for damages and harm resulting from Defendants' negligent, fraudulent, and unlawful conduct concerning a residential mortgage loan and foreclosure proceedings on their properties.

54. Plaintiffs allege that Defendants are third-party strangers to their mortgage loan and have no ownership interest entitling them to collect payment or declare a default. By hiding behind the complexities of the mortgage finance system, Defendants brazenly attempt to dupe Plaintiffs (and millions of other American homeowners) into believing that they have the right to collect on a debt in which Bank of America has no ownership interest. In an attempt to further their fraudulent scheme and create the air of propriety surrounding their debt collection efforts, Defendants failed to execute and record an "Assignment of Deed of Trust" prior to closing and

falsely represented to Plaintiffs and ***to the Court*** that they have the right to take Plaintiffs'

property away. Through this action, Plaintiffs seeks to stop Defendants' fraudulent practices,

discover the true holder in due course of their Promissory Note ("Note"), and determine the

status of Defendants' claims.

## PROBLEMS WITH THE LOAN ORIGINATION

55.     Each of the Plaintiffs purchased for value their individual properties listed above

as they are commonly known.  Each deed was thereafter recorded at the proper county recorders

office (hereinafter "the Subject Properties").

56.     Each Plaintiff purchased their properties on different days and different years,

however all purchases were made on or about January 2004-December 2009.  Each Plaintiff

executed Promissory notes ("the Note") in favor of a Defendant who was then listed as the

"Lender" on the loan documents.

57.     The parties to the individual Notes include Plaintiffs, as the specifically defined

"Borrowers," and Defendants, as the specifically defined "Lender".

58.     The Notes state that anyone who takes the Note by transfer becomes the "Note

Holder."

59.     The Notes state that if the Borrower is in default, the *Note Holder* may declare the

Note to be in default and accelerate the remaining balance of the Note.

60.     As described in more detail below, it is unknown who the current Note Holder is

because Defendants sold and then attempted to assign, transfer, or securitize the Notes at some

point after funding, thus improperly transferring the Notes to unknown third parties.

61.    On or around the same day Plaintiffs executed the Notes; Plaintiffs executed a Deed of Trust (hereinafter "the Trust Deed") for purposes of securing the Notes.

62.    The Parties to the Trust Deeds were the Plaintiffs, specifically defined as the "Borrowers," Defendants Countrywide or Bank of America, specifically defined as the "Lender," and MERS which purported to act "solely as the nominee of Lender [Defendants] and Lender's [Defendant's] successors and assigns."

63.    The Trust Deeds do not include a definition of "nominee" or of "Lender's successors and assigns."

64.    In contradiction to its claim to be acting "solely as the nominee of the Lender," MERS also claimed to be "the beneficiary under this Security Instrument."

65.    The Trust Deeds were thereafter recorded in the proper County Recorder's Office.

66.    As described above only the "Lender" may cause the defined Trustee under the Trust Deeds to execute written notice of the occurrence of an event of default as well as the Lender's election to cause the Subject Property to be sold.

## THE FUNDING AND SECURITIZATION OF THE NOTE

67.    As reflected in the Note, the original Lender was Countrywide or Bank of America.

68.    During the Mortgage Boom Era of 2002 to 2007, Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the American Dream—homeownership. Mortgage lenders and investment banks aggressively lured the American people into predatory loans with teaser interest rates and into purchasing homes with inflated appraisals under the promise that the booming real estate market would continue to boom. Wall Street took

the soon to be toxic loans and bundled them into "Mortgage Backed Securities" through a process known as "Securitization." These securities were then sold to investors in the form of certificates, whereby the investors became the "Certificate holders" of the securities that were to be fed by the toxic loans.

69. Knowing that the predatory loans would soon default and turn into toxic assets, Wall Street placed their bets accordingly and bought exotic insurance products in the form of Credit Default Swaps. Thus, when the Mortgage Boom turned into a Mortgage Meltdown (which it did), they would stand to make even more profit when the mortgage insurance paid them out for their "losses."

70. However, in their rush to "securitize" the predatory loans, Wall Street failed to actually follow their own rules and regulations, creating the instant situation where the securities are not actually backed by any mortgages at all. Under the standard model, the promissory notes were *supposed* to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificate holders"). These "true sales" allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against default. The purpose of securitizing collateral debt obligations was to provide a large supply of money to lenders for originating loans, and to provide investment to bond holders, which were expected to be relatively safe.

71. The Securitized Trusts, if ever formed properly, are subject to and governed by (1) the Pooling and Servicing Agreement; (2) the Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of Delaware or New York, depending on its origin;

and (5) Internal Revenue Code section 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

72. An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering. This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in case of default.  In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process—the promissory note and the security instrument (deed of trust or mortgage). In these cases, on information and belief, neither document was validly transferred.

73. Here, Plaintiffs allege that the "true sales" never took place due to the failure to follow the basic legal requirements for the transfer of a negotiable instrument and thereby, the legal, equitable and pecuniary interest in the Plaintiffs' Notes and Mortgages. As a result thereof, Bank of America, which purports to be the Plaintiffs' creditor, actually has no right, title or interest in the Plaintiff's Notes and Mortgages, and has no right to collect mortgage payments, demand mortgage payments or report derogatorily against the Plaintiff's credit.

74. Plaintiffs further allege that, on information and belief, the trust that purportedly owns Plaintiffs' Notes and Mortgages, have been dissolved due to the disbursement and receipt of mortgage insurance payouts to Defendants and the Certificate holders (including, but not limited to, credit default swaps and other mortgage insurance products). As a result of these mortgage insurance payouts, Defendants have been paid in full on Plaintiffs' debt obligation.

75.     Nonetheless, Defendants attempts to take advantage of the complex structured finance system to defraud the Plaintiff's, who have sought for years to reach a financial arrangement with their true creditor and avoid the possibility of being subjected to double financial jeopardy. Plaintiffs anticipate that Defendants will seek a Court-sanctioned bailout by submitting a blatantly fabricated "Assignment" via a Request for Judicial Notice, thereby committing fraud on the Court, and attempting to further mislead Plaintiffs into believing that Defendants are their actual creditor, and are entitled to enforce their obligation.

76.     Plaintiffs do not dispute that they owe money on their mortgage obligation. Rather, Plaintiffs dispute the amount owed and seek the Court's assistance in determining who the holder in due course is of their Note and Deed of Trust, and specifically what rights, if any, Defendants have to claim a secured or unsecured interest in their Notes or Mortgages.

77.     Plaintiffs' information and belief is based on (1) title reports and analysis of the Properties county records; (2) direct written and oral communication with Defendants; (3) their counsel's research, experience and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports and publicly available securitization documents and practices; and (4) an audit of Defendants filings with the Securities and Exchange Commission ("SEC"), including Defendant's 424B5 Prospectus and Pooling and Servicing Agreement ("PSA").

78.     Plaintiffs information and belief is further based on a Securitization Audit of their Notes and Mortgages that the Plaintiff's commissioned in order to help determine: (1) the owner of their loans, and (2) the secured/unsecured status of their Notes and Mortgages.

79.     Based on the findings of the Audit, Plaintiffs believe and allege thereon that their Notes were supposed to be properly securitized as mortgage-backed securities that is, "pooled" together in a trust pool. The trusts are regulated by New York Trust Law, specifically § 7-2.01(c). Plaintiffs allege that their Notes were *not* securitized and that the Trusts have no legal, equitable, or monetary interest in their Promissory Notes such that they can demand payment from them. Further, after conducting the Securitization Audit of the Plaintiff's chain of title and Defendants PSA's, it was determined that the Plaintiff's Notes and Mortgages were not properly conveyed into the various trusts (if they were ever properly formed) because (1) the beneficial interest in the Plaintiff's Notes and Mortgages were not effectively-assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey Plaintiff's Notes and Mortgages to the various Trusts) prior to the Closing Date of the Trusts and, (2) Defendant's failed to perfect the title to the Plaintiff's Notes and Mortgages by not *strictly* following the requirements of the PSA and other laws, regulations, agreements that govern the administration of the trusts. As the purported Trustee of the Trusts, Defendants cannot take action which is not authorized by the agreements that created and govern the Trusts.  Defendants attempt to acquire an interest in Plaintiff's loans after the closing date indicated in the PSA, is an ultra vires act that is violation of the Trust Agreements (i.e., PSA).

80.     The Plaintiffs executed Notes and Mortgages in favor of Defendants obtaining loans on their Properties.

81.     Plaintiffs allege and believe thereon that on or around the time of origination of their loans, Defendants attempted to securitize and sell their loans to another entity or entities. **That entity was *not* Bank of America or the Trusts.**

82.     Plaintiffs allege on information and belief that Defendants never sold, transferred, or granted their Notes or Mortgages to the Sponsor, Depositor, or Bank of America, and that BANK OF AMERICA is merely a third-party stranger to the loan transaction.

83.     Furthermore, Plaintiffs allege that none of the Defendants or Doe Defendants can demonstrate or document that Plaintiff's Notes were ever properly endorsed, and transferred to Defendants.  In fact, Plaintiff's have requested that Defendants verify and validate Plaintiff's debt. Although this information should be readily available to any mortgage servicer, Bank of America has failed to provide any evidence to verify the owner of Plaintiff's Notes and Mortgages or the true and correct amounts that are owed.

84.     The parties involved in the alleged Securitization and transfer of Plaintiff's Notes and Mortgages failed to strictly adhere to section 2.01 of the PSA, which requires that Plaintiff's Notes and Mortgages be properly endorsed, transferred, accepted and — deposited with the Trust (or its custodian) on or before the "Closing Date" indicated on the PSA. The "closing date" is the date by which all of the Notes and Mortgages must have been transferred into the various Trusts. The failure to do so results in the Notes and Mortgages not being part of the Trust res, such that it is not a loan that Defendants can attempt to collect on.

85.     The failure to deposit and transfer the Notes into the various Trusts before the closing date is a violation of the PSA and of New York trust law. Consequently, Defendants, as Trustees for the Trusts, cannot claim any legal or equitable right, title or interest in the Plaintiff's Notes and Mortgages, since Defendants cannot take any action which is not authorized by the Securitization agreements that created and govern the Trusts.

86.     There is no duly acknowledged or recorded "Assignment" executed before the closing date of the Trusts and therefore did not even transfer Plaintiff's Notes and Mortgages to the mortgage-backed securities pool. The lack of an "Assignment" raises numerous red flags as it supports that Plaintiff's Notes and Mortgages were not deposited into the various Trusts by the closing dates. The failure to deposit the Notes into the Trusts before the closing date is a violation of the PSA and of New York trust law. Consequently, the Trust cannot claim any legal or equitable right, title or interest in the Plaintiff's Notes and Mortgages since the current Note-holder cannot take any action which is not authorized by the Securitization agreements that created and govern the Trusts.

87.     Plaintiff's do not allege or assert that they are a beneficiary or party to the PSA. Rather, Plaintiff's allege that the failure to securitize their Notes makes it impossible for Defendants, or the Trusts to claim, allege or assert that they assigned, transferred or granted Plaintiff's Notes or Mortgages, or any interest-therein, in any manner whatsoever. Plaintiff's also allege that the-failure to securitize their Notes and Mortgages has resulted in an unperfected lien that Defendants cannot enforce in any manner whatsoever.

88.     Based on a search of the public records, there has been no assignment located to establish a clear chain of title from the Lender to Bank of America or the Trusts prior to the closing date. The inability to locate an assignment pre-dating the closing further demonstrates that Plaintiff's Notes and Mortgages were not properly deposited into the Trusts. The failure to deposit the Notes into the Trusts before the closing date is a violation of the PSA and of New York trust law.

89.     The Plaintiff's relied on Defendants misrepresentations and have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation against them; (2) the title to their homes has been clouded and rendered unmarketable, as any would-be buyer of Plaintiff's homes will find themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiff's homes or get title insurance; (3) Plaintiff's have been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) Plaintiff's are unable to determine whether they sent their monthly mortgage payments to the right party; and (5) Plaintiff's have expended significant funds to cover the cost of attorneys' fees and related costs.

90.     In addition to seeking compensatory, consequential, punitive and other damages, Plaintiff's seek Declaratory Relief as to whether the Deed of Trusts (Mortgages) secures any obligation of Plaintiff's in favor of Defendants, such that either of them can collect Plaintiff's mortgage payments, demand payment or engage in debt collection activities.

## PLAINTIFFS LOAN MODIFICATION AND DEBT VALIDATION EFFORTS

91.     Each of the Plaintiffs began having economic difficulties when the real estate market crashed, sending the World into a severe economic downturn (recession to some, depression to others). Each Plaintiff contacted their mortgage servicer, Defendants, and inquired into options available to them. Each Plaintiff greatly desires to keep their home and pay their debts. However the high interest only loans that most of the Plaintiffs were induced into accepting, after being told that they wouldn't have any trouble refinancing, were causing significant financial hardship.

92.     All of the Plaintiffs were told by Defendants representatives that they could not be helped until after they went into default by stopping to make their monthly mortgage payments. Some of the Plaintiffs accepted the advice of Defendants and entered default in order to gain assistance or a modification that would enable them to keep their home and make their payments.

93.     Some of the Plaintiffs have struggled, by getting second and third jobs, by depleting their retirement funds and savings accounts in order to stay current on their payments.

94.      In an effort to verify and validate their debt, the Plaintiffs sent Defendants Qualified Written Request letters, pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), in which they requested that Defendants (the purported mortgage servicer) provide, among other things, "The name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage notes." 12 U.S.C. §2605(e) requires that the servicer provide this information and respond to a written request within 60 days of receipt. Some of the Defendants received inadequate responses that contain no information other than a copy of their promissory notes and deeds and others have received no response.

**THE LACK OF A PROPER ASSIGNMENT OF DEED OF TRUST INDICATES THAT NO INTEREST WAS EVER CONVEYED TO DEFENDANTS**

There is no duly acknowledged Assignment recorded with the County Recorders that purports to transfer an interest in Plaintiff's Notes and Mortgages to Defendants prior to closing. Plaintiff's allege that this is because no transfer of interest ever occurred.

95.     The lack of a proper "Assignments" supports the fact that Defendants are facilitating and aiding and abetting the illegal, deceptive and unlawful enforcement of Plaintiff's Notes and Mortgages and engaging in other illegal debt collection activities.

96. Defendants have been acting in a manner to mislead the Plaintiff's into believing that Defendants had the authority to demand payments from them.

97. Plaintiff's further allege that any amount allegedly owed under the note is subject to equitable offset by the actual, consequential, special, and punitive damages owed to Plaintiff's from Defendants, which amount is currently unknown, but will be determined upon conducting discovery. Plaintiffs believe this amount will be in excess of the amount of their debt obligations.

98. As alleged herein, Plaintiff's Notes were not properly negotiated, endorsed and transferred to Defendants, who seeks to cause its purported authorized agent to collect mortgage payments and engage in other unlawful collection practices.

99. On information and belief, none of the Defendants are present holders in due course of Plaintiff's Notes such that they can enforce Plaintiff's obligations.

100. On information and belief, Defendants are/were a nonholder in possession of Plaintiff's Notes and do not have the rights of the holder.

101. On information and belief, none of the Defendants are entitled to enforce Plaintiffs' Notes.

102. Plaintiffs allege that, on information and belief, Defendants fraudulently enforced debt obligations in which they had no pecuniary, equitable, or legal interest. Defendants conduct is part of a fraudulent debt collection scheme.

**PLAINTIFFS HAVE SUFFERED, AND CONTINUE TO SUFFER, SIGNIFICANT MONETARY, LEGAL AND EQUITABLE DAMAGES**

103. The conduct described above by Defendants and/or Does was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the

Notes and Mortgages. However, despite such knowledge, said Defendants continued to demand and collect Plaintiff's mortgage payments.

104.    Defendants engaged and are engaging in a pattern and practice of defrauding Plaintiffs, in that, on information and belief, during the entire life of the mortgage loans, Defendants failed to properly credit payments made; incorrectly calculated interest on the accounts; and failed to accurately debit fees.

105.    On information and belief, at all times material, Defendants had and-have actual knowledge that Plaintiff's accounts were not accurate, but that Plaintiffs would make further payments based on Defendants' inaccurate accounts.

106.    On information and belief, Plaintiffs made payments based on the improper, inaccurate and fraudulent representations as to Plaintiff's accounts.

107.    As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs overpaid in interest.

108.    As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff's credit and credit score have been severely damaged. Specifically, because of the derogatory credit reporting on their credit report by Defendants, the Plaintiffs are unable to refinance out their present loans, buy other properties, or sell their homes.

109.    As a direct and proximate result of the actions of the Defendants set forth above, the title to Plaintiff's homes has been slandered, clouded and its, salability has been rendered unmarketable.

110. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs do not know who the current beneficiary of their Notes and Mortgages actually are, such that they are now subject to double financial jeopardy.

111. As a direct and proximate result of the actions of the Defendants set forth above, *multiple* parties can attempt to enforce Plaintiff's debt obligations.

112. The conduct of Defendants and one or more of the Doe Defendants have led to the imminent loss of Plaintiff's homes and to pecuniary damages. The pecuniary damages include, but are not limited to, the costs overcalculation and overpayment of interest, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, costs associated with removing the cloud from their property title and attorneys' fees, in an amount to be proven at trial.

113. The conduct of Defendants and one or more of the Doe Defendants' conduct was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiff's Notes and Deed of Trusts, yet they set out on a course to intentionally and fraudulently cover up this defect by wrongfully purporting to be the legal owner of Plaintiff's Notes and Mortgages, which would enable them to *illegally and fraudulently* collect on Plaintiff's debts, and which in essence has rendered the title to the property unmarketable.

114. The title to Plaintiff's Properties has been rendered unmarketable and unsalable because of the possibility of multiple claims being made against Plaintiff's debt and underlying security (the Subject Properties). If Plaintiffs actual creditors are not found, Plaintiffs will be incurably prejudiced. Plaintiffs will be denied the opportunity to identify and negotiate with their *true creditors* and exercise their right to verify and validate their debts.

115. Plaintiffs will be denied the opportunity to identify their true and current creditors/lenders/beneficiaries and subsequently negotiate a settlement with them.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment against all Defendants)

116. Plaintiffs incorporate and reallege in full paragraphs 1 through 102 of this Complaint.

117. A true, present, and justiciable controversy exists between Plaintiffs and Defendants.

118. The Defendants are attempting to foreclose on the Subject Properties via non-judicial foreclosure sales.

119. Defendants do not, however, have a secured or unsecured legal, equitable or pecuniary interest in the liens evidenced by the Deed of Trusts and that their purported assignments have no value because they are fraudulent. As such, Defendants do not have the authority to initiate or conduct non-judicial foreclosure sales.

120. Defendants claim, however, to have enforceable interest in, and perfected liens against, Plaintiff's Notes, Deed of Trusts and Authority; Plaintiffs expressly challenge Defendants' claimed authority.

121. Only the Note Holder or its expressly authorized agent has the authority to initiate such actions.

122. As a result of MERS's role in the relevant sales, assignments, and transfers of the Notes and Trust Deeds, there is no public record regarding the sales, assignments, and transfers of the Notes and Trust Deeds.

123.     Accordingly, it is impossible for the Plaintiffs to determine whether Defendants are acting pursuant to proper authority, particularly in light of the fact that Defendants have repeatedly refused to provide the Plaintiffs with any information establishing their purported authority to conduct the non-judicial foreclosure sales.

124.     Because there is a factual dispute regarding the Defendants' authority to conduct a non-judicial foreclosure sale under Washington's Trust Deeds Act, Plaintiffs seek a declaration of rights regarding the respective rights and authority of the parties to this action. Specifically, Plaintiffs request that this Court make a finding and issue appropriate orders stating that none of the named Defendants have any right or interest in Plaintiff's Notes, Deed of Trusts or the Properties which authorizes them to collect Plaintiff's mortgage payments or enforce the terms of the Notes or Deed of Trusts in any manner whatsoever.

125.     Moreover, because:

    a.     MERS is not a real party in interest since it styles itself merely as a nominee and is not a valid beneficiary under the Trust Deeds;

    b.     Does not validly claim to be the Note Holder with the power to enforce the instruments;

    c.     Does not have a valid agency relationship with any true party in interest; and

    d.     For the other reasons laid out in this complaint,

Plaintiffs seek a declaration that the preceding items should be judicially declared, and it should be further declared that MERS does not have the authority to supersede and ignore the traditional recording methods as established by Washington law.

126.     The Court should declare that MERS does not have a right to accelerate the Notes, declare defaults, foreclose or initiate foreclosure proceedings absent its ability to produce a valid express agency agreement with the Note Holders.

## SECOND CLAIM FOR RELIEF
### (Fraud Against Defendants)

127.     Plaintiffs incorporate and reallege in full paragraphs 1 through 113 of this Complaint.

128.     Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . including the false representation of . . . the character, amount, or legal status of any debt . . . and the threat to take any action that cannot legally be taken."

129.     At all times material hereto, Defendants had actual knowledge that their written statements as to the alleged ownership of Plaintiff's Notes and Deed of Trusts and their authority to institute foreclosure proceedings were false statements of material fact which were false when made and known by Defendants to be false when made.

130.     Defendants made the subject false statements with the specific intent that Plaintiffs relied thereon and with the separate specific intent to defraud Plaintiffs.

131.     Plaintiffs, not being in the mortgage lending or loan acquisition business, reasonably relied on the written statements of Defendants and acted thereon, including but not limited to paying monies to the Defendants when demanded.

132.     As a direct and proximate result of the actions and course of conduct of Defendants, Plaintiffs have suffered damages.

## THIRD CLAIM FOR RELIEF
### (Accounting)

133.    Plaintiffs incorporate and reallege in full paragraphs 1 through 119 of this Complaint.

134.    Defendants have held themselves out as Plaintiff's creditors and mortgage servicers.  As a result of this purported relationship with Plaintiffs, said Defendants have a fiduciary duty to Plaintiffs to properly account for Plaintiffs' monies paid to them.

135.    As a result of the aforementioned fraudulent and/or negligent conduct, Plaintiffs paid Defendants their mortgage payments for a period of approximately five years.  However, for the reasons stated herein, none of this money was actually owed to the named Defendants.  For that reason, these monies are due to be either credited back to Plaintiffs or credited to the rightful holder in due course of Plaintiff's Notes.

136.    The amount of the money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.  Plaintiffs are informed and believe and thereon allege that the amount due to each of the Plaintiffs exceed $75,000.00.

## FOURTH CLAIM FOR RELIEF
### (Violation of Fair Debt Collection Practices Act,
### 15 U.S.C. § 1692f(6) by Defendants)

137.    Plaintiffs incorporate and re-allege in full paragraphs 1 through 123 of this Complaint.

138.    The Fair Debt Collection Practices Act (the "Act") prohibits a debt collector from "taking or threatening to take any non-judicial action to effect dispossession or disablement of

property if …there is no present right to possession of the property claimed as collateral through an enforceable security interest…." 15 U.S.C. § 1692 f (6).

139.    Defendants qualify as debt collectors under the Act, because they use instrumentalities of interstate commerce of the mails for the purpose of enforcing security interests. 15 U.S.C. § 1692 a (6).

140.    The Plaintiffs (as Borrowers) entered into various Trust Deed agreements with Defendants (as Lender) for the purpose of securing Plaintiff's payment obligations under the Notes.

141.    As previously alleged by the Plaintiffs, Defendants sold and attempted to assign, transfer, or securitize the Notes at some point after funding, thus improperly transferring the Notes to an unknown third party.

142.    Despite the fact that Defendants sold and attempted to assign, transfer, or securitize the Notes, Defendants have purported to substitute successor trustees and have, in some cases, executed and recorded a Notice of Default and Election to Sell for the purpose of foreclosing on some of the Plaintiff's properties.

143.    As alleged by the Plaintiffs herein, Defendants sold and attempted to assign, transfer, or securitize the Notes prior to its attempt to appoint successor trustees.  Thus, the Defendants are not acting on behalf of the true holder of the Notes and have no authority to take non-judicial action to dispossess the Plaintiffs of their Properties.

144.    Accordingly, 15 U.S.C. § 1692 f (6), the Court should enjoin the Defendants from conducting non-judicial foreclosure sales of the Plaintiff's Properties.

**WHEREFORE**, Plaintiffs pray as follows:

1.      For compensatory, special and general damages in an amount according to proof at trial against all Defendants;

2.      For punitive and exemplary damages in an amount of $5,000,000.00 per Plaintiff;

3.      For an order enjoining the further disposition of the Properties pending resolution hereof;

4.      An order declaring:

  (a)      The rights of the parties relative to the Notes and the Properties;

  (b)      That MERS is not a real party in interest since it styles itself merely as a nominee and is not a valid beneficiary under the Deed of Trusts;

  (c)      That subsequent to the initial sale, assignment, and/or transfer of the Notes, MERS is not a valid Note Holder with the power to enforce the instruments, including the right to declare default, foreclose or initiate foreclosure proceedings absent its ability to produce a valid express agency agreement with the Note Holders;

  (d)      That MERS does not have a valid agency relationship with any true party in interest; and/or

  (e)      That Defendants lack any interest in the Properties, which permitted them to foreclose or attempt to foreclose the Deeds of Trust and/or sell the Properties.

5.      For an order finding that Defendants have no legally cognizable rights as to the Plaintiffs, the Properties, Plaintiff's Notes, Deeds of Trust, or any other matter based on contract or any of the documents prepared by Defendants tendered to and executed by Plaintiffs;

6.    The Court issue an order restraining Defendants, their agents or employees, from continuing or initiating any action against the Properties and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

7.    For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiffs and returning the same to Plaintiffs with interest thereon at the statutory rate from the date the funds were first received from Plaintiffs;

8.    For costs of suit incurred herein;

9.    For reasonable attorneys' fees incurred; and

10.    For such other and further relief as the Court may deem property.

DATED this 18th day of May 2012.

**CORVUS LAW GROUP, LLC**


/S/ Kevin Johnson_____
Kevin Johnson
Attorney for Plaintiffs